IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN ADMIRALTY

CASE NO: 20-1616

CERTAIN UNDERWRITERS AT LLOYDS OF LONDON SUBSCRIBING TO POLICY OF INSURANCE NUMBER ROKMAR201800039,

Petitioner,

v.

SAUL MONTALVO,

Respondent
_______________________________________/

**PETITION FOR DECLARATORY RELIEF**

Petitioner, CERTAIN UNDERWRITERS AT LLOYDS OF LONDON SUBSCRIBING TO POLICY OF INSURANCE NUMBER ROKMAR201800039 ("CERTAIN UNDERWRITERS"), individually and collectively file this, their Petition for Declaratory Relief / Judgment against Defendant, SAUL MONTALVO ("MONTALVO") and state:

**NATURE OF ACTION**

1. This Court has subject matter jurisdiction over this matter pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, for the purpose of determining the question and actual present controversy existing between the parties.

2. This is an action in Admiralty pursuant to Article III, Section 2 of the United States Constitution.

3. This is also an action in Admiralty pursuant to Federal Rules of Civil Procedure Rule (9)(h).

4. The subject matter of this action is a policy of marine insurance, specifically a Watercraft Operators Legal Liability Policy (a marine liability contract) bearing policy number ROKMAR201900039 and bearing effective dates of July 15, 2018 through and including July 15, 2019 (hereinafter "the Subject Policy"), named insured Clearwater Jet Ski and Parasail LLC. A complete copy of the Subject Policy is attached hereto as Exhibit "1".

5. This is additionally an action for Declaratory Relief pursuant to 28 USC §. 2201.

**THE PARTIES AND RELEVANT ON PARTY IDENTIFCATION**

6. CERTAIN UNDERWRITERS SUBSCRIBING TO POLICY OF INSURANCE NUMBER ROKMAR201800039 are Insurance Companies transacting business in the Lloyds of London insurance market.

7. At all times material CERTAIN UNDERWRITERS were the watercraft liability insurers for CLEARWATER JET SKI AND PARASAIL LLC.

8. CLEARWATER JET SKI, in turn, rented a jet ski to MONTALVO who carelessly and recklessly ran his rental jet ski, at full speed, into a tour boat operated by PAROTDISE EXPRESS BOAT TOURS LLC ("PARROTDSE EXPRESS'), in wilful contravention of nearly all of the terms and conditions of his rental agreement.

9. At all times material hereto, SAUL MONTALVO ("MONTALVO") was, and is, a resident of Spring Hill, Florida

10. CERTAIN UNDERWRITERS have filed a Complaint for Exoneration From or Limitation of Liability arising from the aforementioned collision before this Honorable Court [Case Number 8:19-cv-01888-TGW].

11. Both PARROTDISE EXPRESS and its insurer at all times material hereto ENDURANCE ASSURANCE CORPORATION ("ENDURANCE') filed Claims in the

Limitation of Liability action and concurrently filed a Third Party Claim against MONTALVO, effecting Service of Process on MONTALVO on October 16, 2019.

## JURISDICTION AND VENUE

12. This Court has Admiralty and Maritime jurisdiction pursuant to 28 U.S.C. § 1333, as the subject matter of this action involves a contract of wet marine insurance.

13. This is also an action in Admiralty pursuant to Federal Rule of Civil Procedure (9)(h).

14. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 because the events giving rise to the underlying claim occurred in this District, the contract of insurance was delivered in the District, CLEARWATER JET SKI, PARROTDISE EXPRESS AND MONTALVO each reside in this District, ENDURANCE transacts business in this district and the above-referenced Limitation of Liability Action is pending in this District.

15. All proper and present interests are before this Court by proper process.

16. All conditions precedent to the initiation and maintenance of this action have been complied with, have occurred, or have been waived.

## FACTUAL ALLEGATIONS

17. This Declaratory Action arises from a collision between a Jet Ski owned and rented by CLEARWATER JET SKI to MONTALVO on February 8, 2019.

18. Prior to being permitted to operate CLEARWATER JET SKI's watercraft,, MONTALVO signed a Release which provides, inter alia "I HAVE READ AND AGREE TO THE ABOVE RULES AND UNDERSTAND THAT I TAKE FULL RESPONSIBILITY FOR THESE RULS AND THIS JET SKI RENTAL CONTRACT OR MY LEASE WILL BE TERMINATED." The Agreement/Release is appended hereto as Exhibit "2".

19. After commencing his rental (in clear and direct contravention of MONTALVO's written Agreement/Release with CLEARWATER and thorough verbal instructions from CLEARWATER JET SKI), MONTALVO knowingly failed to maintain a proper lookout and/or maintain a safe distance from the ParrotDise Express Tour Boat that he collided with when he decided to dedicate his left hand to recording selfie-videos on his cell phone while operating the rental JET SKI at full speed without paying one iota of attention to its course.

20. MONTALVO admitted to Pinellas County Sherriff's Officer Ryan Dunning that he "*simply was not paying attention when he ran into the boat*" and that "*he was taking a video of himself while operating the wave runner and that is why he ran into the boat*" when interviewed in the hospital shortly after his accident.

21. MONTALVO also informed Officer Dunning that "*he expected law enforcement to come speak with him about the incident*" and that "*he figured he would be charged with some sort of crime as result of his negligence*."

22. Officer Dunning charged MONTALVO with failing to maintain a proper lookout and failing to operate the rental JET SKI at a safe speed, in light of his conclusion that MONTALVO operated the jet ski in a reckless manner.

23. CLEARWATER JET SKI sued MONTALVO for the damage to their wave runner and MONTALVO admitted liability for the collision in open Court, as is recorded in the Judgment that was entered against him on May 21, 2019 in Pinellas County Court Case UCN 522019SC003024XXSCSC 047.

24. MONTALVO has continued to defend the criminal misdemeanour charges against him including PARROTDISE EXPRESS's restitution claim and at no time during the restitution negotiations on this criminal charge has MONTALVO ever asserted or even suggested that he was an insured under CLEARWATER JET SKI'S insurance coverages or

requested that CLEARWATER JET SKI'S insurers ("CERTAIN UNDERWRITERS") respond to PARROTDISE EXPRESS's restitution demand.

25. CLEARWATER JET SKI FILED A Petition for Exoneration From / Limitation of Liability [Case Number 8:19-cv-01888-TGW] on August 1, 2019. (appended hereto as Exhibit "3").

26. On September 16, 2019, PARROTDISE EXPRESS filed it claim and Third Party Claim in the Limitation action (Appended hereto as Exhibit "4"). The Third Party Claim against MONTALVO is silent as to any allegation of insured status by MONTALVO under CLEARWAER JET SKI's insurance coverages.

27. On October 14, 2019, more than nine months after his accident, MONTALVO was served with PARROTDISE's Third Party Claim in CLEARWATER JET SKI's Exoneration/Limitation of Liability action and yet never even contacted CLEARWATER JET SKI to inquire as to whether there was any possibly he could be insured under their insurance coverages.

28. MONTALVO's silence continued in the following five (5) months after his Service of Process through his deposition in the Limitation Action on February 25, 2020. At no time prior to his deposition or during his deposition did MONTALVO suggest, advise or inquire as to whether he might be an insured under CLEARWATER JET SKI's insurance coverages.

29. Much to the contrary, MONTALVO allowed this adversarial deposition to proceed to CERTAIN UNDERWRITERS' prejudice in light of his subsequent claim that he might be insured under CLEARWATER'S insurance coverages which he first raised months later, upon information and belief at the urging to PARROTDISE EPRESS'S counsel.

30. Upon information and belief, MONTALVO only first suggested that he was insured under CLEARWATER JET SKI's insurance policy (in fact via PARROTDISE

EXPRESS's counsel on the eve of mediation in the Exoneration/Limitation of Liability action) post-deposition **after** PARROTDISE EXPRESS's counsel implanted the idea of coverage in him as a means to collusively, blatantly and wrongfully extracting a more substantial settlement of PARROTDISE EXPRESS's claim from CLEARWATER JET SKI and CERTAIN UNDERWRITERS. .

31. Specifically, it was not until June 5th, 2020 that MONTALVO contacted the undersigned via email (more than 3 months after his deposition) and articulately inquired: "*I have been named as a defendant in the above referenced case. A copy of the complaint is attached. Please let me know if I am considered an insured under the policy issued to Clearwater Jet Ski & Parasail LLC (Certificate Number Rokmar-2017000039).*" (A copy of Mr, Montalvo's email is appended hereto as Exhibit "5").

32. On June 9th 2020, counsel for PARROTDISE EXPRESS advised the undersigned counsel for CERTAIN UNDERWRITERS that he had "*received a consent judgment from Saul Montalvo. I have not filed it – I will wait until after mediation but I wanted to make you aware of this prior to mediation*."

33. In response, the undersigned counsel for CERTAIN UNDERWRITERS replied:

> I appreciate your notice, but this smack of collusion.
>
> Saul Montalvo was served on October 14th, seven and one half months ago and never notified us of a pending lawsuit or asked that we defend him. He even remained silent in his deposition where he had every opportunity to do so. He demanded a defense and indemnity on Friday June 5th at 5 PM and entered into a Consent Judgement sometime today (June 8th) which you have conveniently provided at 5:36PM today hours ahead of tomorrow's Mediation.
>
> Let's look at the facts. Mr. Montalvo cannot speak English, at least he couldn't at his deposition, yet he sent me a perfectly articulated email demand in English which I suspect you (or someone you directed him to) drafted. In my response, I asked him when he was served and noted that if it was more than 20 days ago, that he advise when he was served and further asked that he provide the reason for his delay (which is beyond prejudicial to my clients and so clearly collusive that it smacks of bad faith). I even raised his claimed inability to speak English and asked if he would like me to provide my response in Spanish. He never responded, which I suspect you're also well aware of.

(Both emails are appended hereto as Composite Exhibit "6").

34. On June 15th 2020, counsel for PARROT DISE express, via email, provided a copy of a Fully Executed Stipulation for Settlement between PARROTDISE EXPRESS and MONTALVO. Counsel's email provides: "*Please confirm that the insurance carrier is not going to provide Saul Montalvo with a defense and indemnification in this case. If the insurance carrier is not providing indemnification, we intend to move forward with obtaining a consent judgment*."

35. In response, the undersigned counsel for CERTAIN UNDERWRITERS replied "*Please have Mr. Montalvo answer the questions posed to him. No decision can be made until he responds*." (Both emails, including the referenced Stipulation are appended hereto as Composite Exhibit "7").

36. The question posed has never been answered.

37. Notwithstanding all applicable coverage defenses outlined herein, CERTAIN UNDERWRITERS have been severely prejudiced by MONTALVO's delayed notice and subsequent entry into his Settlement Agreement, Stipulation for Entry of Judgment and Agreement Not to Execute with PARROTDISE EXPRESS, which undoubtedly smack of collusion.

## **THE POLICY**

38. CERTAIN UNDERWRITERS issue Policy Number ROKMAR201800039 and bearing effective dates 7/15/18 through 7/15/19. A copy of the Policy in full is appended hereto as Exhibit "1".

39. The Policy contains, *inter alia*,

SECTION I – COVERAGES

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE

1. Insuring Agreement

a. We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have **no duty to defend the insured against any "suit" seeking damages for … "property damage"** to which this insurance does not apply.

[Policy Page 17]

40. SECTION I – COVERAGES – 2. EXCLUSIONS

This insurance **does not apply to**:

a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.'

[Policy Page 18]

g. "Bodily injury" or "property damage" arising out of the ownership …. use or entrustment to others of any … watercraft owned or operated by or rented or loaned to any insured…

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured if the …"property damage" involved the ownership … use or entrustment to others of any …watercraft that is owned by or rented or loaned to any insured."

[Policy Page 19]

41. SECTION II – WHO IS AN INSURED

At subsections 1 through 3, the Policy defines who is an insured. Watercraft renters are not included. [Policy pages 25-26].

42. SECTION IV COMMERCIAL GENERAL LIABILITY CONDITIONS

2. Duties in the Event of Occurrence

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence or offense took place

(2) The names and addresses of any injured persons and witnesses, and

(3) The nature and location of any injury or damage arising out of that "occurrence" or offense.

b. If a claim is made "suit" is brought against any insured, you must

(1) Immediately record the specifics of the claim or "suit" and the date received and

(2) Notify us as soon as practicable

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"

(3) Cooperate with us in the investigation or settlement of the claim or defense against the suit

d. No insured will, except at that insured's own cost, voluntarily …. Assume any obligation…

[Policy Page 27].

43. SECTION IV COMMERCIAL GENERAL LIABILITY CONDITIONS

2. Legal Action Against Us

No person or organization has a right under this Coverage Part…

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial…. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**THE RENTAL AGREEMENT / RELEASE**

44. As set forth in Paragraph 18, prior to being permitted to operate CLEAWATER JET SKI's watercraft, MONTALVO was required to sign a Release / Jet Ski Rental Contract.

45. This Agreement required MONTALVO to, *inter alia*, keep a proper lookout, take ready actions to avoid collisions, avoid aggressive maneuvers and not to go closer that 75 yards to any other vessel (boat, wave runner, sail boat, seawall, sandbars, etc.).

46. MONTALVO further acknowledge that jet skis do not have breaks and that he should constantly scan, operate defensively and avoid aggressive maneuvers.

47. MONTALVO’s actions on February 8, 2019 were in such flagrant disregard of the safety rules he acknowledged and agreed to abide by that the resulting collision cannot be said not to have been expected and were solely occasioned by MONTALVO's own flagrant, intended violation.

**THIS ACTION**

48. There exists a bona fide actual present and practical need for the declaration of coverage as to the state of facts concerning the rights and obligations or the Underwriters of this Policy.

49. Underwriters and the Respondents, and each of them, have an actual present controversy in the subject matter described herein.

50. CERTAIN UNDERWRITERS are in doubt of their rights under the Policy and, by the Petition, seeks a declaration of their rights and obligations with respect to the aforesaid underlying Third Party Claim against MONTALVO and a finding by this Court that Underwriters have neither a duty to defend nor indemnify MONTALVO under the above-referenced Policy of Insurance.

**COUNT I – NO COVERAGE**
**PURSUANT TO SECTION 1, EXCLUSION (a)**

51. CERTAIN UNDERWRITERS adopt and reallege Paragraphs 1 through 50 as though fully set forth herein and state:

52. The SECTION I – COVERAGES – SUBSECTION (2). EXCLUSIONS AND SPECIFICALLY Exclusions (a) excludes coverage for ""property damage" expected or intended from the standpoint of the insured.

53. While CERTAIN UNDERWRITERS continue to assert that MONTALVO is not insured under Policy ROKMAR201800039, even if MONTALVO can somehow achieve insured status under the policy, his wilful and intentional action of videotaping himself while operating the jet ski which collided with the PARROTDISE EXPRESS tour boat and failing to adhere to Rental Agreement Rules and Restrictions set forth in Paragraph 47 and in the Agreement itself (Exhibit "2") rises to the level rendering his actions expected and arguably intentional bringing his rental with Exclusion (a) [Set forth in Paragraph 39, supra].

54. By its specific language, Exclusion (a) in the Subject Policy unequivocally applies and CERTAIN UNDERWRITERS have neither the duty nor obligation to defend or indemnify MONTALVO on the claim(s) asserted against him by PARROTDISE EXPRESS.

**COUNT II – NO COVERAGE**
**PURSUANT TO SECTION 1, EXCLUSION (g)**

55. CERTAIN UNDERWRITERS adopt and reallege Paragraphs 1 through 50 as though fully set forth herein and state:

56. The SECTION I – COVERAGES – SUBSECTION (2). EXCLUSIONS AND SPECIFICALLY Exclusions (g) excludes coverage for …""property damage" arising out of the ownership …. use or entrustment to others of any … watercraft owned or operated by or rented or loaned to any insured…"

57. EXCLUSION (g) further provides "This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured if the …"property damage"

involved the ownership … use or entrustment to others of any …watercraft that is owned by or rented or loaned to any insured."

58. By its specific language, Exclusion (g) in the Subject Policy unequivocally applies and CERTAIN UNDERWRITERS have neither the duty nor obligation to defend or indemnify MONTALVO on the claim(s) asserted against him by PARROTDISE EXPRESS.

**COUNT III – NO COVERAGE**

**MONTALVO IS NOT AN INSURED UNDER THE POLICY SECTION II DEFINIITIONS OF WHO IS AN INSURED**

59. CERTAIN UNDERWRITERS adopt and reallege Paragraphs 1 through 50 as though fully set forth herein and state:

60. COVERAGE A– BODILY INJURY AND PROPERTY DAMAGE and specifically SECTION II WHO IS AN INSURED delineates a specific list [in Sub-Paragraph 1 (sections (a) through (e), Sub-Paragraph 2 (a) through (d) and Sub-Paragraph 3 (a) through (c)] identifying who is an Insured under CERTAIN UNDERWRITERS Policy ROKMAR201800039.

61. By the specific language of SECTIONII – WHO IS AN INSURED, Renters such as MONTALVO are neither identified nor included.

62. The language is specific and deliberate, and MONTALVO is therefore not entitled to a defense or indemnity under the Policy.

**COUNT IV – NO COVERAGE**

**UNDERWRITERS HAVE BEEN PREJUDICED BY MONTALVO'S FAILURE TO ADHERE TO POLICY NOTICE REQUIREMENTS**

63. CERTAIN UNDERWRITERS adopt and reallege Paragraphs 1 through 50 as though fully set forth herein and state:

64. CERTAIN UNDERWRITERS have been prejudiced by MONTALVO's inexplicable delay in Notice of his claim.

65. SECTION IV COMMERCIAL GENERAL LIABILITY CONDITIONS delineate an Insured's policy obligations in the event of a loss. MONTALVO flagrantly breached these provisions.

66. The record in the Limitation of Liability action confirms that MONTALVO was deposed five months after Service of the Third Party Claim against him.

67. Moreover, MONTALVO appeared for Deposition, testified under oath in contravention to the statements he had given to the Pinellas County Sheriff's Office (Officer Ryan Dunning), in contradiction to his friend who was with him at the time of the accident (Lexis Espinet Colon) and against CLEARWATER JET SKI in a clear effort to save his own skin.

68. At no time during his Deposition did MONTALVO inquire, suggest or otherwise testify that he was or might be insured under CLEARWATER JET SKI's insurance policy notwithstanding that he, upon information and belief, had already discussed same with PARROTDISE EXPRESS's counsel.

69. Notwithstanding, the delay between Service of Process and Deposition and the intentional failure to delay Notice until after his deposition is prima facie evidence of MONTALVO's bad faith and collusion and makes a prima facie case of prejudice to CERTAIN UNDERWRITERS.

70. Equally, neither MONTALVO or any attorney assisting him or representing him has been willing to answer the question why he waited nine months to fist make a simple inquiry.

WHEREFORE, Plaintiff, CERTAIN UNDERWRITERS requests that this Court enter a Judgment Declaration that:

a. CERTAIN UNDERWRITERS have no duty to defend MONTALVO on the Third Party Claim of PARROTDISE EXPRESS.

b. CERTAIN UNDERWRITERS have no duty to indemnify MONTALVO on

the Third Party Claim of PARROTDISE EXPRESS.

c. MONTALVO is not an Insured under Policy Number ROKMAR201800039.

d. Even if MONTALVO may have been an insured under the aforementioned policy (which CERTAIN UNDERWRITERS deny and reject), CERTAIN UNDERWRITERS have been prejudiced by MONTALVO's delayed and engineered Request/Demand for Indemnity/Defense.

e. That MONTALVO'S Settlement Agreement, Stipulation for Entry of Judgment and Agreement Not to Execute with PARROTDISE EXPRESS but declared null and void as a sham pleading.

Dated this 15th day of July, 2020.

Respectfully submitted,

By: *____/s/ Neil Bayer____________*
Neil Bayer, Esq.
Fla Bar No.: 615684

By: *___/s/ Chase Alexandra Jansson_______*
Chase Alexandra Jansson, Esq.
Fla Bar No.: 1002265

Campbell Johnston Clark, LLP
*Attorneys for the Petitioners*
2600 Douglas Road
Suite 508
Coral Gables, FL 33134
Tel. : 786-204-3784
Email: neil@cjclaw.com
Email: chase@cjclaw.com
Email: cindy@cjclaw.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing document was furnished by email this 15th day of July, 2020 to:

***Attorneys for the Respondent***
Andrew Klymenko, Esq.
Coleman & Klymenko, LLC

1980 Central Avenue
St. Petersburg, Florida 33712
Tel: +1 (727) 213-8100
Email: aklymenko@ckflalaw.com

***Attorneys for Petitioner***
Campbell Johnston Clark LLP
Douglas Centre
2600 Douglas Road, Suite 508
Coral Gables, FL 33134
Tel: 786-204-3784
Email: neil@cjclaw.com
chase@cjclaw.com
cindy@cjclaw.com

By: __*/s/ Neil Bayer*__________________
Neil Bayer, Esquire
FBN: 615684

By: __*/s/ Chase A. Jansson*_____
Chase Alexandra Jansson, Esquire
FBN: 1002265